The next case is United States v. Smith. Good morning, Your Honors. I may have pleased the Court. Your Honors, I'd like to address the waiver of appeal and the obstruction of justice enhancement issues, if I may, beginning, and I'll answer any other questions that the Court has. Beginning with the waiver of appeal issue, because the circumstances that followed the 2016 sentencing, because of these circumstances, the connection between the 2014 appeal waiver provision and the 2019 resentencing was tenuous, and the waiver should not be applied to the resentencing. The government effectively abandoned the appeal waiver provision by consenting to the 2255 motion. The Court will note on page 42 of the record, you'll see paragraph 18 of the plea agreement, and it indicates the defendant in some substance knowingly waives the right to appeal and collaterally attack any component of a sentence. To impose this now, this Court would have to cherry pick that provision out. You're asking us to find that the case goes up on appeal because there's an error, and then there's a resentencing that the plea agreement doesn't apply. It wouldn't apply to the government under your theory either, right? The government wouldn't be bound by the plea agreement either. You're saying a resentencing cancels the plea agreement? Is that what you're arguing? Not automatically. It would depend on the circumstances. These circumstances here, the very provision that has the appeal waiver provision, has been discarded by the government through a position that they've taken. You say it was discarded, but the government agreed to something to the benefit of your client. The only thing that I think would be placed on the government's shoulders here in this type of situation was to reaffirm, for instance, when they're replying on page 164, 165 to our motion, reaffirm that paragraph 18 is still in effect. It's the very sentence itself that this provision, they're consenting to. It's within the same exact sentence as the appeal waiver. If they say that one part of it doesn't apply. The circumstances have changed to the benefit of your client. It's hard for me to understand why suddenly the appeal waiver is gone. Is it simply because the government consented to recalculating the guideline range because one of the convictions had been vacated? I mean, if that's the case, the government, you're suggesting the government shouldn't consent to these things. No, and I don't mean to talk over you, Judge. No, what I'm saying is that the government needs to be clear when it's addressing the very same sentence. Keep in mind that this motion, we believe, we likely would have won even without the government's consent. This was a very clear error. We do recognize that the government would really have had no position in opposition, but five years had passed. A defendant under these circumstances, we believe, would not believe that the appeal waiver was still in effect. The government makes reference in their brief that we didn't raise this in our principal brief. I don't understand the time. The time is not, you know, sometimes cases go up on appeal and take a lot of time to develop. The line that your client agreed to says he won't attack on appeal or quarterly attack any component of a sentence, a sentence imposed by the court. This is a sentence imposed by the court on this case, on this exact same charges. So the provision that he agreed to was not limited by time, by whether it's the first sentence, the second sentence or the third sentence. True, Judge. It's just that the circumstances here have to do with the same provision, and I don't mean to be repetitive in that regard. I do recognize that that part of the appeal. We also argued that there was no consideration, but I looked through the agreement. The government dismissed two counts. They agreed to the third point. They allowed your client an opportunity to earn a five K. They agreed not to seek a sentence outside the guideline range, and they agreed not to appeal a sentence within the guideline range. They had their own appellate waiver provision. I mean, you could argue any one of those things is consideration. But there were five different things your client got out of this. But, Judge, if you focus in on this new proceeding, in order to have the re-sentencing, this was a unilateral decision to consent. There was not a quid pro quo waiver right to appeal the re-sentencing in exchange for the sentencing being reduced. And I understand. The waiver in the first instance, they have to do something new? No, but this is a new proceeding. There's a change of circumstances, Judge. With the court's permission, may I address, I see I only have a minute. If the court does reach the substantive issues, I just want to point out with regards to the sentencing enhancement on the obstruction of justice. District Court below made no finding at all with regards to the mens rea element.  I think the case law is clear that it has to be remanded should the court reach it. And we believe the court should reach that issue here. There was a great deal of talk below about items being sent to the jail. And I think that needs to be fleshed out more. If you look carefully at the exhibit, which addresses the conversation with regards to something purportedly going to a jail, the court made no findings in that regard. These were comments made late at night. These are facts that just were not fleshed out by the court below, consistent with the court not making any finding with regards to the mens rea element. And with that, I believe I have two minutes, Judge, for rebuttal. Thank you, Mr. Murphy. We'll hear from the government. I believe you're still muted, Ms. Gregory. Off to a bad start. Good morning. May it please the court, Catherine Gregory, Assistant U.S. Attorney representing the government in this matter. Your Honor, Mr. Smith unambiguously waived his right to appeal the sentence pursuant to the waiver provision of the plea agreement. Now, we were unable to address most of these attacks on the waiver because, unfortunately, he waited until the reply brief to raise 16 pages of new argument. But I would just direct the court, without getting too much into case law, that we weren't able to flesh out to United States v. Avery, which is a summary decision from this court at 762 Federal Appendix 50, that basically reaffirms that being resentenced pursuant to the same plea agreement doesn't invalidate one specific waiver provision. And Smith really cites nothing to support his argument on that point. But even on the merits, the district court's sentence in this case was substantively and procedurally reasonable. Substantively, an aggregate term of 84 months was certainly appropriate in a case where Mr. Smith stole 49 firearms, 49. That is, 49 more guns on the streets of New York City, according to the informant and the 5K letter. And the weight that the district court gives to any one 3553A factor this court has held is firmly committed to the sentencing judge's discretion. And that's exactly what happened here. The district court acknowledged Mr. Smith's rehabilitative efforts. It congratulated him on his progress between the first sentencing and the resentencing. But it also highlighted the seriousness of this offense. What about the obstruction point? Yes. Was there, were there sufficient findings made regarding mens rea, etc.? Yes. As this court has held, there are no magic words that need to be recited at sentencing. And the district court didn't have to verbatim cite the enhancement before making its findings. If you look at. But we do require the findings be made, right? Yes. And the district court is also presumed to have considered everything that's been submitted to it. So I just would quickly summarize what what exactly it's presumed to have reviewed, which is the revised PSR, which at paragraph 59. What's reviewed is not enough. We've said over and over again. One case is the Woodward case where on this enhancement we said it's only appropriate. The district court makes a finding that the defendant had the specific intent to obstruct justice. This finding is essential because the term willfully implies a mens rea requirement. So we don't just say, well, the judge reviewed these things. This is what the judge reviewed. The judge has to make an explicit finding, no magic words, but a finding of specific intent to obstruct justice. And I think Mr. Murphy is correct that there's nothing in the record where the judge said, I find that Mr. Yes. On page 111 of the appendix, the judge said that the court finds, quote, there is sufficient basis for that two point application for obstruction of justice based on the defendant's actions and posting that information on Facebook. And then he says, I think, even though it was only up there for a short time. What is what is what is commenting on his actions? You could you could. I would submit that that's what was his intent. What did the judge say about his intent? That appears to be the sum of what the district court summarized its findings as. But I would also direct this court to Siliano. So. So, yes, most of the time this court doesn't want to see a finding as to the mens rea. But it has also clearly said that in some cases, conduct can be so inherently obstructive of administration of justice that the enhancement should be applied. Murphy argues on these circumstances. It's not inherent or clear because he pled guilty. Wasn't trying to affect his proceeding in some way. It wasn't like it was going to be a trial. He points to the fact that the government said in a letter that the defendant was trying to distract from his own cooperation. So, yes, I'm glad you want to raise that. So 3C1.1 actually says that the enhancement applies during the investigation, prosecution or sentencing phase. So it doesn't matter that Smith had already pled guilty because 3C1.1 in its very language said trying to affect the sentence. How is he trying to affect the sentence? Well, he says that he was trying to affect the witness's conduct. And I think that the five K letter is also a red herring. It doesn't exonerate Smith's intent. It simply acknowledges his stated motivation in obstructing justice. So by his own admission, he was trying to influence that person's conduct by outing them on Facebook. Maybe he was trying to deflect attention, but he did it by intentionally intimidating another witness. And I'm not quite sure that I understand Smith's argument that he didn't know this person was a witness because he got the name. He posted the police reports from his own case. He verbatim copied them from the discovery in his case. The police reports that said this person by name is a witness cooperating with law enforcement in his and his co-defendants cases. So and he then called that person a rat. And then he encouraged others to say he said, yeah, you should send those police reports to the jail where that person is incarcerated. So I just if so, is that is that is that is that obstructing justice or is that trying to bring attention to someone he perceives to be a rat? They're not mutually exclusive. And I think when you look at what he actually did, which is post discovery documents to Facebook, accusing someone of being a rat and encouraging them to. What I'm trying to ask is, I think Judge Bianco was asking the same thing was, how does that impact the proceedings? How does that impact his case? Or is he simply outing a cooperator? Well, there's there's there's a reason I think that 3C1.1 specifies that it can also be during the sentencing phase. And that's because a lot of things can happen at sentencing. People people could submit letters. You know, the district court can take into account. I understand that. I don't I don't disagree with it. But how does this particular conduct impact the ongoing criminal proceedings? By intimidating. I mean, I just it just seems it's intimidating a witness by posting outing them as a rat. The government's position that any time they are automatically obstructing justice because of disclosing someone's cooperation is that the government's position they are specifically intending merely by the disclosure itself to try to impact a proceeding or an investigation every time. I wouldn't go that far. And you don't need to go that far in this case when when he's calling them a rat and posting police reports and encouraging others to send it to the jail. So I just it seems just so patently obstructive here that somebody would would throw out a confidential witness's name and his and his co-defendants cases. What if it was done because he was cooperating himself and didn't want anybody to focus on him? What if that was his intent? Like, I don't want anybody to focus on me. I want to affect my proceeding. I certainly don't focus on me. I certainly don't think this court wants to send the message that that's an acceptable way to distract from someone cooperating with the government. And, you know, whatever the the the time of night it was or wherever he was sending any message. We're just saying there has to be a finding. You're suggesting that it's self-evident in every type of situation like this, that it's obstruction. No, I wouldn't go that far, Your Honor. I'm saying it's self-evident in this specific situation. But what makes it, if you could, Marshall, what are your reasons for saying it's self-evident here? Because it sounds from, I mean, the absence of a finding is the thing we're stumbling over. And if the district court had addressed specific intent and told us why, we wouldn't be thinking of alternative scenarios. So what makes it conclusive in this case and not in all cases, if we accept your argument? I see my time has expired. If I could just quickly answer. You can answer. Yes, please go ahead. OK, so there so there were a number of things that make the government's position is that makes itself evident here. OK, first is the fact that Smith has never disputed what he actually did. So he admits that he looked through the police reports that were given to him in discovery, that he posted them to Facebook, that he typed the contents of those reports verbatim, identified that person by name as an individual cooperating with law enforcement. He said in his letter and he said through counsel at sentencing that his intention was to change that person's conduct. He didn't want that person, he believed, to be calling him a rat. So there is there is a perception on his part that he wants to influence this person's conduct, that he's going to do it by. And this person he knows is a witness in his and his co-defendants cases. And he's going to do that by calling them a rat, posting discovery documents. And when someone suggests you should send it to the jail where that person is incarcerated, he says, yeah, that's a great idea. And it's after considering all of that and his admission, his halfhearted explanation that, oh, he didn't really mean it. You know, it was late at night. It just in this specific instance, those are the indicators. The fact that he didn't dispute that what happened, the fact that it's self-evident by what he did and his admissions, that this is just inherently obstructive. And I would I would submit to the court that this is the kind of case that Castigliano was talking about. But in any event, we request that the court affirm the sentence. Thank you, Miss Gregory. We'll we'll hear rebuttal. Thank you, Your Honor. A couple of things. Counsel mentions the influencing of the subject of the Facebook posting. I just want to point out to the court commentary note for a it would have to be unlawfully influencing. It's not just influencing someone. The comparison to what a judge has to consider under thirty five fifty three. A I think we'll see that in the government's brief ECM page twenty nine. They do. They say to Fernandez, it's for the proposition that all these things were in front of the court. So, of course, the court, of course, the court knew and understood the argument. But, of course, that's not the obligation under three C one point one. As far as it being self-evident, this court in Reed, that was another that was another situation that there was a sentencing that was still out there. And the defendant did not give like forwarding address. And the court went down the road recognizing and citing to a Ponte that perhaps there could be a situation where there could be an inherently obstructive act where we're not going to focus in on the mens rea. This comes nowhere close to that. I respectfully I think opposing counsel plays down too much the position that they took below. It was their reaction to this, that this was to distract. And they were frankly lukewarm throughout the proceedings. If you look at page one, 10 of the appendix, there's their sentencing factors. They basically just said, well, we consent to the findings of the PSR. I don't think I don't I don't think their position really changed too much from there. The Calisano case, if I believe if I have the name correctly, I believe that was the situation where the defendant had provided information to a target of a pending FBI investigation. The facts were very clear. I think that's in complete contrast to our matter. I'm about out of time. Thank you very much, Your Honors. Thank you both. Well argued and we'll take the matter under under advisement.